## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| VALCHEMIST LLC, | § | |
| | § | |
| *Plaintiff*, | § | Civil Action No. 4:25-cv-1290 |
| | § | |
| v. | § | JURY DEMANDED |
| | § | |
| MJ SPORTS INC. d/b/a BLU TRACK and | § | |
| RANDY BELDING | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE U.S. DISTRICT JUDGE:**

NOW COMES, VALCHEMIST, LLC, Plaintiff, complaining of MJ SPORTS INC. d/b/a BLU TRACK and RANDY BELDING, Defendants, in this Plaintiff's Original Complaint and for cause of action respectfully shows unto the Court as follows, *to-wit*:

### I. INTRODUCTION

1. This action arises from Defendant MJ Sports, Inc. d/b/a Blu Track ("**Blu Track**") and Defendant Randy Belding's ("**Belding**") (collectively, "**Defendants**") submission of a "Notice of Claimed Infringement" to Amazon.com, Inc. ("**Amazon**"), asserting that Plaintiff Valchemist LLC ("**Valchemist**" or "**Plaintiff**") was selling counterfeit Blu Track products. Following this submission, Amazon removed Plaintiff's FlexTrack 5000 listings from its platform, preventing Plaintiff from offering its products on Amazon during the start of the 2025 holiday season.

2. Plaintiff and Blu Track both manufacture and sell flexible racetracks in the toy market. Plaintiff manufactures and sells its own original designs under its federally registered

VALCHEMIST® trademark. Plaintiff does not use the BLU TRACK® mark, does not reference Blu Track in its labeling or packaging, and has no commercial relationship with Blu Track.

3.      Plaintiff contends that Defendants' submission to Amazon was not the result of mistake or a good-faith effort to enforce intellectual-property rights. The complaint included several factual assertions that Plaintiff asserts are inaccurate, including statements regarding product safety, country of origin, and the nature of Plaintiff's business operations. Plaintiff also contends that Defendants submitted their complaint without conducting a test-buy, without investigation, and without a factual basis for the allegation of counterfeiting.

4.      At the time of the takedown, Plaintiff's FlexTrack 5000 products ranked within the top tiers of Amazon's Toys & Games category, often within the top 200–300 products nationwide. Plaintiff had invested substantial resources throughout 2025, including advertising, promotions, inventory planning, and seasonal forecasting—to prepare for the holiday shopping period. After the submission of Defendants' complaint on November 10, 2025, Plaintiff's listings were removed, and its sales velocity, search visibility, and algorithmic ranking declined immediately.

5.      Plaintiff disputed Defendants' statements and requested a retraction so that Amazon could reinstate its listings. Amazon's takedown notice indicated that reinstatement required either (a) a letter of authorization from Blu Track, (b) an invoice showing authorized sourcing from Blu Track, or (c) a rights-owner retraction. Because Plaintiff is not a Blu Track licensee or distributor, only a retraction could restore its listings. Plaintiff alleges that Defendants declined to provide that retraction. In response to a formal demand letter, Defendant Belding replied: "Received, not read. We will continue to follow Amazon's lead and advice on this matter."

6.      As a result, Plaintiff's listings remain suppressed, and Plaintiff asserts it has suffered and continues to suffer lost sales, loss of algorithmic ranking and seasonal momentum, reputational injury, and disruption to its Texas manufacturing operations.

7.      Plaintiff seeks a judicial declaration that its products are not infringing upon Blu Track's intellectual-property rights, damages for Defendants' alleged false advertising, unfair competition, tortious interference, defamation, and business disparagement, and injunctive relief to prevent further misuse of Amazon's enforcement tools and to remedy ongoing marketplace suppression.

## II.  PARTIES

8.      Valchemist LLC, is a limited liability company duly organized and existing under the laws of the State of Texas, having its principal place of business at 210 Security Court, Wylie, Texas 75098.

9.      MJ Sports, Inc., d/b/a Blu Track is an Iowa corporation with its principal place of business at 122 Davidson Blvd, Anamosa, Iowa 52205 and may be served by delivering a copy of the Summons and Complaint to an officer, a managing or general agent or to any other agent authorized by appointment or by law to receive service of process.  Alternatively, MJ Sports, Inc., d/b/a Blu Track may be served with process by servicing its registered agent, Randy Belding, at 122 Davidson Blvd, Anamosa, Iowa 52205.  Additionally, MJ Sports, Inc., d/b/a Blu Track may be served through the Office of the Texas Secretary of State at P.O. Box 12079, Austin, Texas 78711.

10.      Randy Belding is an individual with a home address at 478 Chamber Drive, Anamosa, Iowa 52205 and may be served with process by delivering service of process to him

personally or by providing service of process at his dwelling or usual place of abode with someone of suitable age and discretion who resides there.

### III. JURISDICTION

11.    The United States District Court for the Eastern District of Texas has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1338(a) (jurisdiction over trademark actions and copyright actions), 28 U.S.C. § 1338(b) (jurisdiction over unfair competition claim joined with a substantial and related claim under the trademark laws and copyright laws), 15 U.S.C. § 1121(a) (jurisdiction over actions arising under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*), 17 U.S.C. § 101, *et seq.* (jurisdiction over actions arising under the Copyright Act of 1976) and 28 U.S.C. §§ 2201 and 2202 (jurisdiction over actions arising under the Declaratory Judgment Act).  The Court also has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367(a) because the state law claims arise out of the same operative facts as the federal claims.

12.    This Court has personal jurisdiction over Defendants because Defendants sell and/or offer for sale goods and/or services, and otherwise conducts business, in Texas, including in this judicial district.  Further, Defendants assertion of infringement of alleged copyright, trademark and trade dress were directed at Plaintiff in the State of Texas.  Thus, this Court has both general and specific personal jurisdiction over Defendants.

### IV. VENUE

13.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because Blu Track resides within this district, transacts business within this district and offers for sale goods in this district.  Thus, venue is proper because Blu Track is subject to the personal jurisdiction of this Court in this district and thus qualifies as a resident of this district.  In addition, Plaintiff has

suffered harm in this district as a result of Defendants' actions and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## V.  AGENCY & RESPONDEAT SUPERIOR

14.     Whenever in this Complaint it is alleged that Defendant(s) did, or failed to do, any act, thing and/or omission, it is meant that Defendant(s) itself/themselves or its/their agents, officers, servants, employees, vice principals, or representatives either did or failed to do such act, thing and/or omission, and it was done with the full authorization or ratification of Defendant(s), and/or done in the normal routine, course and scope of the agency or employment of the Defendant(s) or their agents, officers, servants, employees, vice principals, or representatives and/or with actual and/or apparent authority of the Defendant(s).

## VI.  FACTS COMMON TO ALL CLAIMS

### A.     Plaintiff's Business and Amazon Marketplace Presence

15.     Plaintiff is a Texas-based manufacturer and seller of a dual-lane, fifteen-foot flexible racetrack designed for die-cast toy vehicles, which Plaintiff sells to the public in connection with the trademark FLEXTRACK 5000 ("**FlexTrack 5000 Mark**") (racetrack in connection with FlexTrack 5000 Mark referred to as "**FlexTrack 5000 product**").

16.     A photograph of a roll of Plaintiff's FlexTrack 5000 product appears below:



17.     Plaintiff offers the FlexTrack 5000 in multiple colors, including, daytona blue, electric green, princess pink, racing blue and rocket red.

18.     Below is a photograph showing Plaintiff's FlexTrack 5000 in use:



19.     Plaintiff owns common law trademark rights in connection with the FlexTrack 5000 Mark.  It began using the FlexTrack 5000 Mark on or about November 2024 and has used the FlexTrack 5000 Mark through the entirety of the United States in connection with the sale of the racetrack.

20.     Each FlexTrack 5000 product is manufactured in Dallas County, Texas, using Plaintiff's own original designs, proprietary elastomeric materials, unique packaging and distinctive trade dress.

21.     Also, Plaintiff owns the U.S. Trademark Registration No. 7,348,370 for the standard character mark VALCHEMIST® ("**Valchemist Mark**") and sells its products in connection therewith, including the FlexTrack 5000 products. *See* Exhibit "A" attached hereto, which is a copy of the Certificate of Registration of the Valchemist Mark from the United States Patent & Trademark Office.

22.     Through a contract between itself and Amazon, Plaintiff sells nationwide through Amazon, including Amazon.com.  Amazon's internal performance metrics, including Buy Box

visibility, seller reputation, Account Health, and ASIN ranking, significantly affect product visibility and sales performance.

23.    An ASIN (Amazon Standard Identification Number) is a unique 10-character alphanumeric code that Amazon assigns to products in its catalog.  It serves as an internal identifier for tracking and managing products, organizing them on the platform and enabling customers to search for specific items directly on Amazon.

24.    High-performing listings on Amazon rely on algorithmic stability and positive account health.  Unfounded intellectual property complaints can immediately collapse listing viability, strip Buy Box placement, downgrade account health, destroy ranking and cause long-term or permanent commercial harm that persists even after any future reinstatement.

25.    Listing suppression causes immediate and lasting impairment to sales velocity, search rankings, Buy Box eligibility and customer visibility.  These algorithmic metrics cannot be restored merely by reinstating a listing and often never fully recover.

26.    Amazon constitutes Plaintiff's primary sales channel and the dominant source of consumer demand for Plaintiff's FlexTrack 5000 products.  Continuity of Amazon marketplace visibility is essential to Plaintiff's commercial viability, and suppression of Amazon listing results in immediate and substantial loss of sales, ranking, goodwill and business momentum that cannot be recovered through other retail channels.

27.    Plaintiff has never used, referenced or associated its products with the Blu Track name, any Blu Track trademarks or any confusingly similar marks in its listing, packaging, marketing or communications.  Further, Plaintiff has never used, displayed, reproduced any copyright owned by Defendants.  Additionally, Plaintiff has never used any trade dress owned by Defendants or any similar trade dress that would cause a likelihood of confusion.

**B.      Defendants and Their Competitive Relationship with Plaintiff**

28.      Blu Track is an Iowa corporation that designs and sells toy racetrack products that directly compete with Plaintiff's FlexTrack 5000 products.

29.      Belding is Blu Track's President, controlling officer, and, upon information and belief, the individual responsible for managing Blu Track's Amazon Brand Registry enforcement activity.

30.      Blu Track and Plaintiff compete for the same Amazon customer, search-term categories, keywords and seasonal demand spikes in the toy-track market, particularly during the Q4 holiday season.  Blu Track's and Plaintiff's listings regularly appear together in search results and occupy the same competitive space for consumer clicks, conversion and sales.

31.      Upon information and belief, Defendants were fully aware of Plaintiff's Amazon presence, marketplace momentum, and competing FlexTrack 5000 product line before submitting their November 10, 2025 Counterfeit Complaint. Defendants understood that Plaintiff's products directly competed with Blu Track's offerings on Amazon and that any Brand Registry enforcement action would immediately and materially impact Plaintiff's sales, ranking, Buy Box visibility, and commercial viability.

32.      Below is a photograph of an advertisement by Blu Track of its fifteen-foot flexible racetrack, shown on Blu Track's website at www.blutrack.com on November 24, 2025.



33.    Below is a photograph of Blu Track's product with packaging adjacent to Plaintiff's FlexTrack 5000 product with packaging.



### C.    The Counterfeit Complaint and False Statements by Defendants

34.    On or about November 10, 2025, Belding, on behalf of Blu Track, submitted a Notice of Claimed Infringement ("**Notice of Claimed Infringement**" or "**Counterfeit Complaint**") to Amazon's Brand Registry targeting Plaintiff's ASINs that comprise Plaintiff's FlexTrack 5000 products. *See* Exhibit "B" attached hereto, which is a true and correct copy of the notice from Amazon sent to Plaintiff regarding the takedown of Plaintiff's FlexTrack 5000 products that includes a copy of the Counterfeit Complaint submitted to Amazon by Defendants.

35.    In the Counterfeit Complaint, Blu Track accuses Plaintiff of infringement.

36.    Specifically, Blu Track states a) that Plaintiff is a "[c]opycat [p]roduct [l]isting[] [that] [r]esemble[s] Blu Track [f]lexible [r]acetracks on Amazon.com," b) that Plaintiff's "product listings on Amazon.com … closely imitate [Blu Track's] proprietary track design, packaging and marketing presentation, leading customers to believe that they are purchasing authentic Blu Track products" and c) that of all the "copyright infringers on [Amazon], the most blatant and most prolific [copyright infringer of Blu Track's products] is easily FlexTrack 5000, manufactured by [Plaintiff]." *Id*.

37.    Further, Blue Track asserts that Plaintiff is a "copycat brand[]," asserting that Plaintiff has infringed and is infringing upon Blu Track's trademark and/or trade dress rights. *Id*.

38.     In the Counterfeit Complaint, Blu Track provided notice of its U.S. Trademark Registration No. 3,118,380 to Amazon and asserted that that trademark registration is being infringed by Plaintiff. *Id.*

39.     Upon information and belief, U.S. Trademark Registration No. 3,118,380, owned by Blu Track, is a trademark registration for the standard character mark BLU TRACK for use in connection with toys, games and playthings, namely, toy vehicles and accessories therefor.

40.     Additionally, in the Counterfeit Complaint, Blu Track made false statements against Plaintiff.

41.     Specifically, Blu Track asserts that Plaintiff lacks safety standards for its products by stating that it "want[s] to make sure that [Plaintiff] meets [its] toy safety standards" and that "it ha[s] requested testing information from [Plaintiff], but ha[s] not heard back." *Id.*

42.     Further, Blu Track asserts that "[Plaintiff] claim[s] to be made in the USA and have passed the same testing measures [Blu Track] has" but that Blu Track "has not been able to confirm any information about if and/or where in America this company's products are manufactured," thus asserting to Amazon that Plaintiff's products are not safe and are not made in America. *Id.*

43.     Blu Track makes another false statement when it states that Plaintiff's "corporate headquarters' registered location [is] a non-commercially zoned single-family residence in Wylie, Texas, with an incorporated attorney out of Florida," thus asserting to Amazon that Plaintiff is not a legitimate business. *Id.*

44.     In the Counterfeit Complaint, Blu Track states that the "infringement type" committed by Plaintiff is "counterfeit." *Id.*

45.    Further, in the Counterfeit Complaint, Blu Track provides five (5) ASINs that comprise Plaintiff's FlexTrack 5000 products, which are infringing Blu Track's rights, namely, B0DMVMS79V, B0DPXZRDX8, B0F44GCZN7, B0F2NCBCV5 and B0DPXZYXNJ. *Id.*

46.    The Counterfeit Complaint was submitted to Amazon by Randy Belding, President of Blu Track. *Id.*

47.    Amazon provided the Counterfeit Complaint with the following Identification Number: 18780905851. *Id.*

48.    Amazon notified Plaintiff about the Counterfeit Complaint, providing a copy of it to Plaintiff. *Id.*

49.    Further, Amazon stated that it had removed certain ASINs of Plaintiff, stated above, specifically, Plaintiff's FlexTrack 5000 products, because of the Counterfeit Complaint submitted by Defendants. *Id.*

50.    Amazon stated that it had removed Plaintiff's FlexTrack 5000 products because Defendants had submitted a report that Plaintiff's FlexTrack 5000 products "infring[ed] on the intellectual property" of Blu Track. *Id.*

51.    According to Amazon, the only viable option for Plaintiff to restore the FlexTrack 5000 products to Amazon's platform is to have Defendants issue a retraction that must be sent directly to Amazon. *Id.*

52.    Upon being notified by Amazon of the takedown, a representative of Plaintiff sent a written communication to Defendants, demanding that Defendants retract the Counterfeit Complaint.

53.    Defendants neither responded to the representative of Plaintiff nor retracted the Counterfeit Complaint.

54.    After no respond was received and no retraction was made, the representative of Plaintiff sent another written communication to Defendant, again demanding a retraction of the Counterfeit Complaint.

55.    Again, Defendants neither responded to Plaintiff nor retracted the Counterfeit Complaint.

56.    On November 13, 2025, counsel for Plaintiff sent a formal written demand to Defendants, demanding retraction of the Counterfeit Complaint. *See* Exhibit "C" attached hereto, which is a true and correct copy of the formal written demand sent to Defendants by Plaintiff's counsel.

57.    In a brazen demonstration of bad-faith by Defendants, Defendants responded to the formal demand letter from Plaintiff's counsel with, in part, "[r]eceived, not read."  Defendants are refusing to even read the communications that Plaintiff and its counsel send to it.

### D.    Belding's Personal Involvement

58.    Upon information and belief, Belding personally authored, approved and submitted the November 10, 2025, Counterfeit Complaint targeting Plaintiff's FlexTrack 5000 products (certain ASINs) and selecting "counterfeit" as the infringement type.

59.    Upon information and belief, Belding exercises ultimate authority over Blu Track's intellectual property enforcement activity on Amazon, including decisions to file, maintain or retract Notices of Claimed Infringement.  Upon information and belief, Belding was the primary decision-maker with respect to the filing of the November 10, 2025, Notice of Claimed Infringement and possessed full control over whether the false allegations were withdrawn.

60.    Corporate officers may be held individually liable when they personally participate in or direct the wrongful conduct at issue.  Upon information and belief, Belding personally

participated in, directed, approved and ratified the actions described herein, including the submission and maintenance of the false Notice of Claimed Infringement.  Accordingly, Belding is individually responsible for the conduct and resulting harm alleged in this Complaint.

61.     Upon information and belief, Belding, on behalf of Blu Track, certified under penalty of perjury that he possessed a good-faith belief that Plaintiff's products were counterfeit or otherwise infringing upon the rights of Blu Track and that the information in the Notice of Claimed Infringement was accurate, despite having conducted no test-buy, inspection or investigation and having no factual basis for those statements.

62.     Belding personally received and responded to Plaintiff's counsel's demand letter and chose to maintain the false allegations.

**E.     Defendants' False and Malicious Counterfeit Complaint to Amazon**

63.     The Counterfeit Complaint included multiple, knowingly false and defamatory statements, including asserting that: a) Plaintiff operates from a "non-commercially zoned single-family residence," b) Plaintiff "Made in USA" designation was deceptive and c) Plaintiff had failed to meet the same toy safety standards as Blu Track.

64.     Upon information and belief, Belding was the moving, active and conscious force behind the wrongful conduct described herein. Belding exercised direct control over the decision to accuse Plaintiff of counterfeiting, to submit the Notice of Claimed Infringement, and to maintain and ratify the false allegations after submission.

65.     Upon information and belief, after receiving Plaintiff's and counsel's demand correspondence, Belding elected to continue the false allegations and expressly ratified the Notice by responding, "Received, not read. We will continue to follow Amazon's lead and advice on this

matter." Belding's response demonstrates his decision to maintain the knowingly false statements despite being placed on actual notice of their inaccuracy.

66.     As set forth above, Belding personally engaged in, directed, approved and ratified the wrongful acts at issue.  Accordingly, Belding bears individual liability for the false and misleading representations, unfair competition, tortious interference with business relations, defamation and business disparagement alleged in this Complaint, regardless of whether such actions were undertaken within the scope of his corporate role.

67.     Each of these statements was and is false.  Plaintiff's products are manufactured in Texas.  Plaintiff maintains a legitimate commercial business operation, and Plaintiff products comply with all applicable safety standards.

68.     Upon information and belief, Defendants did not conduct any test-buy, inspection or verification of Plaintiff's products before submitting their Counterfeit Complaint to Amazon.

69.     The Amazon Brand Registry submission form expressly requests the order number for any test-buy performed.  Defendants left this field blank, confirming that no test-buy occurred and that Defendants had no factual basis for asserting that Plaintiff's products were counterfeit.

70.     Despite this lack of verification on the Counterfeit Complaint, Defendants selected "counterfeit" as the infringing type and certified under penalty of perjury that their statements were accurate and made in good faith.

71.     Upon information and belief, this certification was knowingly false and made with reckless disregard for the truth.

72.     Upon information and belief, Defendants did not select the less severe "trademark infringement" or other non-counterfeit categories available in Amazon's Brand Registry, categories that ordinarily do not trigger automatic removal.   Instead, Defendants selected

"counterfeit," the highest-severity designation in Amazon's enforcement portal and one that results in immediate removal. Given the absence of any test-buy or factual basis, it is reasonably inferred that Defendants selected the "counterfeit" category knowing that doing so would result in prompt removal of Plaintiff's listings and substantial disruption to Plaintiff's Amazon marketplace presence.

73.    Defendants had no factual or legal basis to allege that Plaintiff's products infringe upon Blu Track's rights in its trademarks, including counterfeiting, or that Plaintiff's products failed to meet any safety, origin or packaging requirements.

74.    Upon information and belief, Defendants submitted the Counterfeit Complaint under penalty of perjury, attesting to a "good-faith belief" in infringement and the accuracy of their statements, despite having no such good-faith basis.

75.    Upon information and belief, by certifying false statements under penalty of perjury, Defendants knowingly and intentionally misled Amazon, directly causing the takedown of Plaintiff's ASINs (the FlexTrack 5000 products) and inflicting immediate and continuing commercial harm to Plaintiff.

76.    But for these willful misrepresentations by Defendants, Amazon would not have removed Plaintiff's FlexTrack 5000 products.

77.    Defendants' selection of the "counterfeit" category, failure to conduct any verification, certification under penalty of perjury despite the absence of factual support, refusal to review Plaintiff's written correspondence and admission of "[r]eceived, not read" collectively demonstrate actual malice, reckless regard for the truth and intentional competitive sabotage. These actions are an unlawful attempt to eliminate a competitor.

78.    Upon information and belief, Blu Track does not currently own any United States design patent, utility patent, trade dress registration or other enforceable intellectual property rights covering the configuration, design or overall appearance of its flexible racetracks or packaging that would prohibit the manufacture or sale of Plaintiff's independently developed product.

79.    Upon information and belief, Blu Track's rights are limited to its trademark(s). Plaintiff has never used Blu Track's trademarks or any confusingly similar mark thereto.

### F.    Strategic Timing and Deliberate Competitive Interference

80.    Defendants submitted the Counterfeit Complaint to Amazon on the eve of the Q4 holiday season, a peak period in which toy sales and Amazon search rankings surge.

81.    Removing a top-ranking ASIN during Q4 inflicts disproportionate and lasting commercial damage because algorithmic visibility, sales velocity and ranking cannot be quickly recovered and often suffer permanent degradation.

82.    Prior to Defendants' Counterfeit Complaint, Plaintiff's primary FlexTrack 5000 products (ASINs) regularly ranked among the top 300 toys in Amazon's Toys & Games category, reflecting strong sales velocity, substantial marketplace traction and significant nationwide consumer demand.

83.    Throughout 2025, Plaintiff invested substantial sums in Amazon advertising, sponsored placement, promotions and inventory positioning to prepare for and capitalize on the Q4 holiday season.  These investments were designed to secure and maintain premium placement, stable ranking and high conversion during the peak retail period, and were made in reliance on Amazon's established algorithmic framework that rewards consistent sales history and advertising momentum.

84.     Upon information and belief, at or about the time that Defendants submitted the Counterfeit Complaint, Blu Track's comparable ASINs ranked approximately 2,300 in Amazon's toy ranking and were being outsold by Plaintiff's FlexTrack 5000 products by an estimated five-to-ten fold margin on a unit basis.

85.     Upon information and belief, Defendants were aware of Plaintiff's significant higher ranking, sales volume and advertising investment and knew that the removal of Plaintiff's top 300 ASINs during the Q4 season would divert consumer demand and sales to Blu Track's substantially lower-ranked products, thereby providing Blu Track with a substantial and immediate competitive advantage at Plaintiff's expense.

86.     Upon information and belief, Defendants knew and intended that the removal of Plaintiff's higher-ranked ASINs would divert consumer traffic, clicks and sales directly from Plaintiff's FlexTrack 5000 products to Blu Track's competing products (ASINs), thereby providing Blu Track with an immediate competitive benefit and artificially improving its sales velocity and category ranking.

87.     Amazon's search and ranking algorithms heavily weigh recent sales velocity, advertising history, in-stock stability and uninterrupted listing performance.  Removal of a high-ranking ASIN interrupts these metrics irreversibly, causing long-term or permanent suppression even if a listing is later reinstated.

88.     Upon information and belief, Defendants knew or should have known that submitting a false counterfeit complaint to Amazon during the holiday season would inflict catastrophic and lasting algorithmic damage on Plaintiff's Amazon marketplace position.

89.     Plaintiff's 4Q sales strategy was the product of months of forecasting and substantial capital investment in advertising campaigns, promotional placements and

manufacturing runs planned to meet peak holiday demand.  Defendants' actions not only erased the benefits of those investments but also made recovery impossible because the holiday sales window cannot be recreated or recaptured once lost.

90.    Upon information and belief, the substantial disparity in category ranking and sales velocity created a direct economic incentive for Blu Track to eliminate Plaintiff's competing listings.  By removing a category-leading ASIN during the highest-demand period of the year, Defendants stood to gain a disproportionate share of redirected customer traffic and sales, reinforcing that Defendants' conduct was motivated by competitive self-interest rather than any legitimate enforcement concern.

91.    Upon information and belief, in the days immediately following Amazon's removal of Plaintiff's listings, Blu Track ASINs experienced a significant and rapid increase in rankings within the Toys & Games category, rising from approximately 2,400 on November 9, 2025, to roughly 1,300 two weeks later.

92.    This sharp upward movement is consistent with the redirection of consumer traffic and sales that had previously flowed to Plaintiff's higher-performing, top 300 ASINs and further evidences that Defendants knew and intended the removal of Plaintiff's listings would confer an immediate competitive benefit upon Blu Track.

93.    Upon information and belief, Defendants' Counterfeit Complaint was timed and designated to maximize disruption to Plaintiff and to redirect holiday consumer traffic and sales toward Blu Track's competing listings.  Defendants' sudden submission of the Counterfeit Complaint came after months of uninterrupted coexistence on Amazon, further supporting that the timing was deliberate.

### G.    Amazon's Immediate Delisting and Resulting Harm

94.     Relying on Defendants' Counterfeit Complaint, Amazon immediately removed and delisted Plaintiff's FlexTrack 5000 products from its online platform.

95.     Amazon simultaneously suspended Plaintiff's advertising campaigns, halted customer visibility, restricted inventory movement and blocked all sales activity for the affected products.

96.     Amazon does not independently investigate the truth of a counterfeit allegation in the ordinary course, but instead relies on the rights owner's submission.  As a result, Amazon fully removed the affected ASINs (Plaintiff's FlexTrack 5000 products) from the Amazon marketplace, rendering them completely inactive and unavailable for purchase or customer view.

97.     Amazon's takedown notice expressly informed Plaintiff that its listings would remain inactive unless Plaintiff provided: a) a letter of authorization from Defendants, b) an invoice showing authorized sourcing from Defendants or c) a retraction from Defendants submitted directly to Amazon. *See* Exhibit "B."  Because Plaintiff is not a licensee or distributor of Blu Track, the only viable reinstatement option was a rights-owner retraction.  Accordingly, Amazon's own policy made Defendants' retraction the sole practical and legal means for reinstatement.

98.     Amazon's takedown notice further warned that if Plaintiff could not provide the required proof of authenticity, specifically, an authorization letter, an invoice from Defendants or a rights-owner retraction, Amazon "reserve[s] the right to dispose of the inventory associated with this violation if proof of authenticity is not provided within 60 days." *Id.*

99.     At the time of the submission of Defendants' Counterfeit Complaint to Amazon, Plaintiff had forty thousand (40,000) FlexTrack 5000 units stored across Amazon's fulfillment

centers, all of which are now at risk of destruction solely because Defendants continue to maintain their knowingly false counterfeit complaint and refuse to retract it.

100.     The delisting caused immediate and continued harm to Plaintiff, including: a) substantial lost revenue, including during the peak holiday season, which includes the sudden loss of sales from FlexTrack 5000 ASINs that had consistently ranked among the top 300 toys on all of Amazon, b) destruction of accumulated advertising momentum and algorithmic ranking built through significant 2025 investment in sponsored ads, promotions and inventory positioning, c) loss of search visibility and category placement, d) reputational harm with customers, suppliers and distributors and e) severe manufacturing and fulfillment disruptions caused by the immediate collapse of demand, including the forced cancellation of planned Q4 production and a reduction exceeding fifty thousand (50,000) units of flexible-track manufacturing capacity for the 2025 holiday season.

101.     At the time Defendants submitted the Counterfeit Complaint to Amazon, Plaintiff had forty thousand (40,000) FlexTrack 5000 units already stored within Amazon's fulfillment centers, with additional inventory moving inbound on a rolling basis to meet accelerating Q4 demand.  In parallel, Plaintiff and its Texas manufacturing partner were in the process of producing more than fifty thousand (50,000) additional units, with thousands of tracks being completed and prepared for shipment each week as part of a continuous holiday-season production schedule.

102.     The sudden removal of FlexTrack 5000 products from Amazon's platform forced Plaintiff to halt the production pipeline midstream, interrupting scheduled manufacturing runs, stranding finished and in-process inventory and placing strains on the relationship with its Texas manufacturer.  The loss of committed and anticipated orders jeopardizes ongoing manufacturing

capacity, worker hours and the economic viability of continuing large-scale domestic production for the affected product line.

103.    The combined effect of delisted ASINs (the FlexTrack 5000 products), stranded inventory, halted production and the collapse of Q4 demand magnified the harm far beyond ordinary daily sales loss.  The Counterfeit Complaint effectively disrupted a high-volume U.S. based manufacturing and fulfillment operation that had been built and funded to capitalize on the 2025 holiday season, inflicting damages that are both substantial and not fully quantifiable through ordinary monetary remedies.

104.    The harms caused by Defendants are not limited to lost sales.  Loss of ranking, platform visibility, consumer trust and sales velocity constitute algorithmic and reputational injuries that do not revert to prior levels even if a listing is later reinstated.  Once these metrics collapse, they remain permanently or long-term degraded, causing continuing competitive harm that cannot be undone by Amazon and is not recoverable through ordinary commercial remedies.

105.    Amazon does not compensate sellers for loss of sales velocity, suppressed rankings, diminished algorithmic placement or related marketplace harm resulting from false intellectual-property complaints, further reinforcing that the injuries suffered by Plaintiff are irreparable and not remediable through ordinary monetary compensation.

106.    Moreover, the competitive harm is asymmetric: while Plaintiff's listing remains suppressed, Defendants' competing Blu Track listings continue to accumulate the very algorithmic benefits Plaintiff is losing, including increased sales velocity, search placement and category ranking, as Amazon's platform redirects traffic and sales to available substitute products.  This further entrenches Defendants' competitive position and magnifies the lasting injury to Plaintiff's marketplace standing.

107.    Prior to Defendants' Counterfeit Complaint, Plaintiff has no dispute, no communication and no enforcement-related contact with Defendants.

### H.    Plaintiff's Attempt to Notify Defendants and Mitigate Harm

108.    On November 10, 2025, Plaintiff, through its representative, sent a written communication to Belding directly, informing him that the counterfeit complaint was false and requesting immediate retraction in an effort to mitigate the commercial harm caused by Defendants.

109.    On November 11, 2025, Plaintiff sent a second written communication reiterating the falsity of the Counterfeit Complaint and detailing its harmful commercial impact.

110.    Defendants neither responded to the November 10th and 11th written communication nor retracted their Counterfeit Complaint with Amazon.

111.    On November 13, 2025, Plaintiff's counsel sent Defendants a formal demand letter identifying the falsity of the allegations and demanding an immediate retraction of the Counterfeit Complaint with Amazon.

112.    Defendants received the demand letter but did not retract or amend their Counterfeit Complaint.

113.    After receiving the demand letter, Belding responded to Plaintiff's counsel by stating "Received, not read…," thereby refusing to review or consider the retraction request even when sent by Plaintiff's counsel.

114.    Belding's response demonstrates: a) upon information and belief, actual notice that the allegations were false, b) a refusal to even review the retraction request, c) deliberate indifference to the truth and d) willful intent to allow the harm to continue.

115.    Defendants' refusal to retract the Counterfeit Complaint remains ongoing. Defendants have not withdrawn, corrected or amended their false allegations despite repeated notice, and Defendants' continued maintenance of the false Counterfeit Complaint remains the direct cause of the injuries and harm to Plaintiff.

## I.    Continued Refusal to Correct or Retract False Statements

116.    Upon information and belief, Defendants' continued refusal to withdraw their false allegations is motivated by the intent to preserve the competitive harm caused by their submission of the Counterfeit Complaint and to keep Plaintiff suppressed in the Amazon marketplace. Defendants understood and intended that Amazon would maintain the suppression unless and until the Counterfeit Complaint was retracted.

117.    Amazon will not reinstate the listing without a rights-owner retraction. Defendants' refusal therefore remains the direct and continuing cause of Plaintiff's ongoing marketplace suppression. The harm was foreseeable, entirely preventable and caused solely by Defendants' false statements and refusal to retract.

## J.    Continuing and Irreparable Harm

118.    Upon information and belief, Defendants' continued maintenance of the false Counterfeit Complaint constitutes a deliberate misuse of Amazon's intellectual-property enforcement mechanisms. Defendants acted with knowledge of the falsity of their allegations and have continued to preserve the resulting competitive harm with the intent to suppress Plaintiff's marketplace presence.

119.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer: a) substantial lost revenue and sales velocity, b) long-term loss of Amazon ranking and search visibility that cannot be restored merely by reinstatement, c) lasting harm to

customer goodwill and marketplace reputation, d) loss of competitive advantage and e) significant operational disruption to its Texas-based manufacturing activities, including cancelled production runs and stranded inventory.

120.    These harms were foreseeable, entirely preventable and caused solely by Defendants' false statements, allegations of infringement and refusal to retract.  The injuries continue to compound each day Plaintiff's listings remain suppressed.

121.    Plaintiff's listings remain suppressed, and its Amazon search visibility, sales velocity and marketplace reputation continue to degrade.

122.    Monetary damages alone cannot restore lost algorithmic position, consumer goodwill or marketplace reputation on Amazon's platform.  Thus, Plaintiff has no adequate remedy at law, and injunctive relief is necessary to prevent further irreparable harm and injury to Plaintiff.

## VII.  CAUSES OF ACTION

### COUNT ONE: NON-INFRINGEMENT OF COPYRIGHT

123.    Plaintiff realleges and incorporates by reference the allegations above, namely, Paragraphs 15-122, as if the same were fully set forth herein.

124.    Defendants have asserted, through their Counterfeit Complaint to Amazon, that Plaintiff has and is infringing upon Blu Track's copyright.

125.    Based upon Defendants' assertion of copyright infringement by Plaintiff, Amazon has removed Plaintiff's FlexTrack 5000 products from its online platform, thereby preventing Plaintiff from selling its FlexTrack 5000 products through the Amazon online platform.

126.    Plaintiff has not and is not infringing upon any copyright of Blu Track.

127.    Plaintiff seeks a declaratory judgment from this Court under a) the United States Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* (the Copyright Act), and b) 28 U.S.C.  §§ 2201

and 2202 (the Declaratory Judgment Act).  As an actual justiciable controversy exists by way of Defendants' assertion that Plaintiff is infringing upon Blu Track's copyright, Plaintiff seeks relief from this Court.

128.    Plaintiff is entitled to declaratory judgment that it is not infringing, has not infringed and is not liable for infringing any valid copyright owned by Blu Track in connection with Plaintiff's products, including Plaintiff's FlexTrack 5000 products.

129.    Further, pursuant to 17 U.S.C. § 505, Plaintiff is entitled to award of its attorneys' fees.

### COUNT TWO: NON-INFRINGEMENT OF TRADEMARKS, TRADE DRESS AND COUNTERFEITING

130.    Plaintiff realleges and incorporates by reference the allegations above, namely, Paragraphs 15-122, as if the same were fully set forth herein.

131.    Defendants have asserted, through their Counterfeit Complaint to Amazon, that Plaintiff has and is infringing upon Blu Track's trademarks and trade dress.  Moreover, Defendants assert that Plaintiff is counterfeiting.

132.    Based upon Defendants' assertion of trademark infringement, trade dress infringement and of counterfeiting by Plaintiff, Amazon has removed Plaintiff's FlexTrack 5000 products from its online platform, thereby preventing Plaintiff from selling its FlexTrack 5000 products through the Amazon online platform.

133.    Plaintiff's common law mark is FLEXTRACK 5000, and Plaintiff's registered mark is VALCHEMIST, both of which are used on Plaintiff's FlexTrack 5000 products.  Blu Track's purported mark is BLU TRACK.

134.    Plaintiff's packaging, trade dress and product design are wholly distinct from those of Blu Track.  Plaintiff has never used the BLU TRACK Mark, any confusingly similar

designation, or any representation suggesting affiliation, authorization or endorsement by Defendants.

135.    Plaintiff does not use the mark BLU TRACK, or any confusingly similar mark.

136.    Plaintiff does not use any trade dress owned by Blu Track or any confusingly similar trade dress.

137.    Plaintiff has not and is not infringing upon any trademark or trade dress of Blu Track.  Further, Plaintiff is not counterfeiting the goods of Blu Track.

138.    Plaintiff seeks a declaratory judgment from this Court under a) the Lanham Act, 15 U.S.C. § 1051 *et seq.*, b) 15 U.S.C. § 1125 and c) 28 U.S.C.  §§ 2201 and 2202 (the Declaratory Judgment Act).  As an actual justiciable controversy exists by way of Defendants' assertion that Plaintiff is infringing upon Blu Track's trademarks, trade dress and is counterfeiting, Plaintiff seeks relief from this Court.

139.    Plaintiff is entitled to declaratory judgment that it is not infringing, has not infringed and is not liable for infringing any valid trademark or trade dress owned by Blu Track and is not counterfeiting any good sold by Blu Track in connection with Plaintiff's products, including Plaintiff's FlexTrack 5000 products.

140.    Defendants' actions as described herein have been malicious, deliberate and willful.

141.    Because this is an exceptional case, Plaintiff is entitled to award of its attorneys' fees.

<u>COUNT THREE: TEXAS COMMON LAW BUSINESS DISPARAGEMENT</u>

142.    Plaintiff realleges and incorporates by reference the allegations above, namely, Paragraphs 15-122, as if the same were fully set forth herein.

143.    This is a claim for business disparagement under Texas common law.

144.    Defendants published false and disparaging information about Plaintiff with malice and without privilege that resulted in special damages to Plaintiff.

145.    Specifically, Blu Track stated to Amazon the following: a) that Plaintiff is a "[c]opycat [p]roduct [l]isting[] [that] [r]esemble[s] Blu Track [f]lexible [r]acetracks on Amazon.com," b) that Plaintiff's "product listings on Amazon.com … closely imitate [Blu Track's] proprietary track design, packaging and marketing presentation, leading customers to believe that they are purchasing authentic Blu Track products," c) that of all the "copyright infringers on [Amazon], the most blatant and most prolific [copyright infringer of Blu Track's products] is easily FlexTrack 5000, manufactured by [Plaintiff], d) that Plaintiff is a "copycat brand[]," e) that Defendants "want to make sure that [Plaintiff] meets [its] toy safety standards" and "it ha[s] requested testing information from [Plaintiff], but ha[s] not heard back, thus implying that Plaintiff's products are not safe, f) that "[Plaintiff] claim[s] to be made in the USA and have passed the same testing measures [Blu Track] has" but that Blu Track "has not been able to confirm any information about if and/or where in America this company's products are manufactured," thus asserting to Amazon that Plaintiff's products are not safe and are not made in America and g) that Plaintiff's "corporate headquarters' registered location [is] a non-commercially zoned single-family residence in Wylie, Texas, with an incorporated attorney out of Florida," thus asserting to Amazon that Plaintiff is not a legitimate business.

146.    The above statements by Defendants to Amazon were false and disparaging.

147.    Upon information and belief, Defendants did not conduct any test-buy or product examination, as shown by their omission of any order number in the Amazon form.  Despite this, on the form, Defendants selected "counterfeit" and certified their statement under penalty of

perjury.  This conduct demonstrates knowledge of falsity.  Defendants' admission of "[r]eceived, not read" in connection with Plaintiff's demand letter to Defendant confirms their actual malice.

148.    Defendants' accusations that Plaintiff's products are "counterfeit" and unsafe constitute injurious falsehoods that directly disparage the integrity, quality and authenticity of Plaintiff's goods.

149.    These statements were published across interstate commerce via Amazon's enforcement channels and were not privileged.

150.    As a direct and proximate result of Defendants' business disparagement, Plaintiff suffered damages in the form of pecuniary loss, including but not limited to: a) substantial lost revenue and profits from the delisted products, b) loss of business goodwill and reputation, c) suppression of Amazon algorithmic ranking, visibility and search placement and d) disruption to manufacturing operations and erosion of suppliers and distributor confidence.

151.    Defendants' false statements and malicious refusal to retract caused continuing harm to Plaintiff's reputation and long-standing commercial relationships, in addition to the pecuniary loss described above.

152.    Defendants' conduct was willful, malicious and calculated to injure Plaintiff's business, giving rise to exemplary pursuant to Texas Civil Practice & Remedies Code § 41.003.

153.    Plaintiff therefore seeks compensatory and punitive damages, as well as injunctive relief, enjoining Defendants from making or maintaining any statement concerning Plaintiff or its products that Defendants know to be false.

### *COUNT FOUR:*
### *TEXAS COMMON LAW TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS*

154.    Plaintiff realleges and incorporates by reference the allegations above, namely, Paragraphs 15-122, as if the same were fully set forth herein.

155.    This is a claim for tortious interference with contractual relations under Texas common law.

156.    A contract existed between Plaintiff and Amazon that was subject to interference. Defendants willfully and intentionally acted to interfere with the contract, which caused injury, including actual damages and/or loss, to Plaintiff.

157.    Plaintiff had a contract with Amazon that permitted Plaintiff to sell its goods using Amazon's online platform.

158.    Through its Amazon listings, advertising operations, fulfillment arrangement and customer base, Plaintiff maintained ongoing and valuable business relationships with Amazon and with customers who purchased products through the Amazon marketplace.

159.    Defendants had full knowledge of these business relationships.  Defendants' use of Amazon's Brand Registry enforcement system to target Plaintiff's ASINs (Plaintiff's FlexTrack 5000 products) demonstrates their awareness of Plaintiff's commercial presence and reliance on Amazon-based sales.

160.    Defendants willfully and intentionally interfered with these business relationships by submitting a Counterfeit Complaint to Amazon containing knowingly false and unsupported allegations of counterfeit and infringement, despite having no factual or legal basis for such a complaint.

161.    Defendants employed improper means by submitting a counterfeit allegation without any test-buy or factual basis.  Amazon expressly requests a test-buy order number when submitting a counterclaim allegation, and Defendants left that field blank.  Defendants' selection of "counterfeit" and certification under penalty of perjury, despite having no factual support, constitutes tortious conduct.

162.    Defendants' conduct was intentional.  Defendants knew, or were substantially certain, that their actions would cause Amazon to takedown Plaintiff's FlexTrack 5000 products.

163.    Defendants knowingly interfered with the contract between Plaintiff and Amazon and with Plaintiff's Amazon-based business expectancy by refusing to provide a retraction that Amazon requires for the reinstatement of Plaintiff's FlexTrack 5000 products.  By refusing to retract their false Counterfeit Complaint, Plaintiff's business with Amazon would remain disrupted.

164.    As a direct and proximate result of Defendants' interference, Amazon delisted Plaintiff's products, suspended advertising, restricted inventory movement and prevented Plaintiff for conducting ordinary business with Amazon and its customers.

165.    Plaintiff has suffered damages as a result of Defendants' tortious interference, including, but not limited to, lost sales, diminished marketplace ranking, disruption of advertising and fulfillment operations and loss of commercial goodwill and reputation.

166.    Defendants' conduct was willful, wanton, malicious and grossly negligent. Defendants' continued refusal to withdraw their false allegations, despite multiple notices of falsity, demonstrate malice and bad faith under Texas law and entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code § 41.003.

167.    Plaintiff therefore seeks compensatory and exemplary damages, together with injunctive relief to prevent further interference.

*COUNT FIVE: FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. § 1125(a)(1)(B)*

168.    Plaintiff realleges and incorporates by reference the allegations above, namely, Paragraphs 15-122, as if the same were fully set forth herein.

169.    This is a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

170.    Defendants made false or misleading statements of fact in commercial advertising or promotions about Plaintiff's products that are sold in interstate commerce, the statements were deceptive and material, and, as a result, Plaintiff has been or likely will be injured.

171.    Plaintiff and Blu Track directly compete in the toy racetrack market.  Plaintiff has a commercial interest in the reputation, goodwill and marketplace integrity of its Valchemist FlexTrack 5000 product line.  Further, Plaintiff's FlexTrack 5000 products are sold in interstate commerce.

172.    Plaintiff has established a favorable business reputation as a trusted U.S.-based manufacturer and seller of toy racetrack products on Amazon's online marketplace.

173.    Defendants knowingly made false and/or misleading representations of fact in interstate commerce.  Specifically, Defendants stated to Amazon the following: a) that Plaintiff is a "[c]opycat [p]roduct [l]isting[] [that] [r]esemble[s] Blu Track [f]lexible [r]acetracks on Amazon.com," b) that Plaintiff's "product listings on Amazon.com … closely imitate [Blu Track's] proprietary track design, packaging and marketing presentation, leading customers to believe that they are purchasing authentic Blu Track products," c) that of all the "copyright infringers on [Amazon], the most blatant and most prolific [copyright infringer of Blu Track's products] is easily FlexTrack 5000, manufactured by [Plaintiff], d) that Plaintiff is a "copycat brand[]," e) that Defendants "want to make sure that [Plaintiff] meets [its] toy safety standards" and "it ha[s] requested testing information from [Plaintiff], but ha[s] not heard back, thus implying that Plaintiff's products are not safe, f) that "[Plaintiff] claim[s] to be made in the USA and have passed the same testing measures [Blu Track] has" but that Blu Track "has not been able to confirm

any information about if and/or where in America this company's products are manufactured," thus asserting to Amazon that Plaintiff's products are not safe and are not made in America and g) that Plaintiff's "corporate headquarters' registered location [is] a non-commercially zoned single-family residence in Wylie, Texas, with an incorporated attorney out of Florida."

174.    These statements are false or misleading and misrepresent the nature, characteristic and/or qualities of Plaintiff's products and were intended to influence Amazon's enforcement decisions in a manner that would eliminate Plaintiff's products.

175.    These statements directed to Amazon's Brand Registry constitute commercial advertising and promotion.  Amazon is the dominant retail chain for toy racetrack products and functions as the primary gateway through which consumers access, view, compare and purchase products in the relevant market.  A takedown notice directed to Amazon directly controls whether consumers can see, evaluate or purchase Plaintiff's goods and operates as a commercial message intended to alter consumer purchasing decisions by eliminating Plaintiff's listings and redirecting demand to Blu Track's competing products.

176.    As a direct consequence, Defendants' statements were intended to, and did, influence consumer purchasing decisions by ensuring that consumers could not view, evaluate or purchase Plaintiff's products.

177.    Further, Defendants' statements mislead and deceived consumers as well as Amazon, which removed Plaintiff's FlexTrack 5000 products from its online platform.  Because consumers cannot view, purchase or compare Plaintiff's products while delisted, Defendants' statements materially affected consumers' ability to make purchasing decisions and diverted sales to Blu Track.

178.    Consequently, Plaintiff has suffered lost sales, lost profits, lost customers, lost goodwill, diminished algorithmic visibility, diminished marketplace ranking and harm to its commercial and business reputation.

179.    This is an exceptional case under 15 U.S.C. § 1117, entitling Plaintiff to an award of attorneys' fees and enhanced damages and costs.

### COUNT SIX: UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. § 1125(a)(1)(A)

180.    Plaintiff realleges and incorporates by reference the allegations above, namely, Paragraphs 15-122, as if the same were fully set forth herein.

181.    This is a claim for unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

182.    Defendants made false and/or misleading statements of fact about Plaintiff's FlexTrack 5000 products, which deceived or had the capacity to deceive a substantial segment of potential customers, the deception was material in that it was likely to influence consumers' purchasing decision, Plaintiff's FlexTrack 5000 products are sold by Plaintiff in interstate commerce and Plaintiff has been or is likely to be injured as a result of the statements at issue.

183.    Plaintiff's FlexTrack 5000 products are sold in interstate commerce.

184.    Defendants knowingly made false and/or misleading representations of fact. Specifically, Defendants stated to Amazon the following: a) that Plaintiff is a "[c]opycat [p]roduct [l]isting[] [that] [r]esemble[s] Blu Track [f]lexible [r]acetracks on Amazon.com," b) that Plaintiff's "product listings on Amazon.com … closely imitate [Blu Track's] proprietary track design, packaging and marketing presentation, leading customers to believe that are purchasing authentic Blu Track products," c) that of all the "copyright infringers on [Amazon], the most blatant and most prolific [copyright infringer of Blu Track's products] is easily FlexTrack 5000, manufactured by [Plaintiff], d) that Plaintiff is a "copycat brand[]," e) that Defendants "want to make sure that

[Plaintiff] meets [its] toy safety standards" and "it ha[s] requested testing information from [Plaintiff], but ha[s] not heard back, thus implying that Plaintiff's products are not safe, f) that "[Plaintiff] claim[s] to be made in the USA and have passed the same testing measures [Blu Track] has" but that Blu Track "has not been able to confirm any information about if and/or where in America this company's products are manufactured," thus asserting to Amazon that Plaintiff's products are not safe and are not made in America and g) that Plaintiff's "corporate headquarters' registered location [is] a non-commercially zoned single-family residence in Wylie, Texas, with an incorporated attorney out of Florida."

185.    These statements are false or misleading statements of fact about Plaintiff's products.

186.    Defendants' statements did influence, or had the capacity to influence, consumer purchasing decisions.

187.    Further, Defendants' statements mislead and deceived consumers as well as Amazon, which removed Plaintiff's FlexTrack 5000 products from its online platform.  Because consumers cannot view, purchase or compare Plaintiff's products while delisted, Defendants' statements materially affected consumers' ability to make purchasing decisions and diverted sales to Blu Track.

188.    Consequently, Plaintiff has suffered lost sales, lost profits, lost customers, lost goodwill, diminished algorithmic visibility, diminished marketplace ranking and harm to its commercial and business reputation.

189.    This is an exceptional case under 15 U.S.C. § 1117, entitling Plaintiff to an award of attorneys' fees and enhanced damages and costs.

*COUNT SEVEN: DEFAMATION PER SE*

190.    Plaintiff realleges and incorporates by reference the allegations above, namely, Paragraphs 15-122, as if the same were fully set forth herein.

191.    This is a claim for defamation per se (libel) under Texas Practice & Remedies Code § 73.001.

192.    Defendants published statements to Amazon, a third party, that were defamatory concerning Plaintiff, and Defendants did so while acting negligently regarding the truth of the statement.

193.    Through the submission of their Counterfeit Complaint to Amazon, Defendants published and disseminated false statement of fact about Plaintiff and its products to Amazon, a third-party.

194.    Defendants stated to Amazon the following: a) that Plaintiff is a "[c]opycat [p]roduct [l]isting[] [that] [r]esemble[s] Blu Track [f]lexible [r]acetracks on Amazon.com," b) that Plaintiff's "product listings on Amazon.com … closely imitate [Blu Track's] proprietary track design, packaging and marketing presentation, leading customers to believe that are purchasing authentic Blu Track products," c) that of all the "copyright infringers on [Amazon], the most blatant and most prolific [copyright infringer of Blu Track's products] is easily FlexTrack 5000, manufactured by [Plaintiff], d) that Plaintiff is a "copycat brand[]," e) that Defendants "want to make sure that [Plaintiff] meets [its] toy safety standards" and "it ha[s] requested testing information from [Plaintiff], but ha[s] not heard back, thus implying that Plaintiff's products are not safe, f) that "[Plaintiff] claim[s] to be made in the USA and have passed the same testing measures [Blu Track] has" but that Blu Track "has not been able to confirm any information about if and/or where in America this company's products are manufactured," thus asserting to Amazon that Plaintiff's products are not safe and are not made in America and g) that Plaintiff's "corporate

headquarters' registered location [is] a non-commercially zoned single-family residence in Wylie, Texas, with an incorporated attorney out of Florida."

195.    These statements were objectively false when made.  Defendants knew, or should have known, through minimal diligence, that Plaintiff's products were independently designed, lawfully manufactured in Texas and sold exclusively under Plaintiff's common law and registered trademarks.

196.    Defendants' statements are libel per se because they directly attack Plaintiff's honesty, business integrity, product quality and competence in its trade.

197.    Such statements naturally tend to subject Plaintiff to distrust, ridicule, contempt and disgrace and are inherently injurious to Plaintiff's trade and business reputation.

198.    Defendants knew or should have known that making these accusations to Amazon would cause severe damage to Plaintiff's reputation, commercial relationships, business opportunities and product credibility in the Amazon marketplace.

199.    Defendants made the counterfeit accusation without conducting any test-buy.  The Amazon Brand Registry form provides a field for the complainant to supply an Amazon order number documenting any test-buy performed, and Defendants left that verification form blank. Despite having no factual basis, they selected the "counterfeit" category, a designation that asserts criminal conduct, and certified the truth of their accusations under penalty of perjury.  Selecting such a severe infringement category while bypassing Amazon's test-buy verification field demonstrates knowledge of falsity, reckless regard for the truth and actual malice.

200.  The actions of Defendants were, at the very least, negligent in connection with the statements.

201.    The defamatory statements were made in the course of commerce and caused severe and continuing commercial injury to Plaintiff's business reputation, goodwill, marketplace visibility and commercial relationships.

202.    Consequently, Plaintiff has suffered a) immediate and continuing reputational harm, b) loss of customers, suppliers and distributor confidence, c) substantial loss of sales, visibility and marketplace positioning, d) loss of goodwill and e) diminution of brand value.

203.    Defendants' actions in connection with the statements were not only negligent, they were willful, malicious and made with conscious disregard for Plaintiff's rights and business, entitling Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code § 41.003.

204.    Plaintiff therefore seeks compensatory and exemplary damages as well as injunctive relief prohibiting Defendants from further publishing or disseminating any statements concerning Plaintiff or its products that Defendants know to be false or make with reckless disregard for their truth or falsity.

## VIII.  DAMAGES

205.    As a result of the Defendants' actions, Plaintiff has incurred and/or will incur the following damages:

     A.    Reasonable and necessary attorneys' fees and costs in the proceedings before this Court, and those fees required for any appeal to the Court of Appeals, and thereafter to the Supreme Court.

     B.    Lost sales, lost profits and any other actual damages sustained by Plaintiff due to Defendants' unlawful conduct;

     C.    Harm to commercial and business reputation;

     D.    Diminution of brand value;

E.    Enhanced damages; and

F.    Exemplary damages.

## IX.  DEMAND FOR JURY

206.    Plaintiff requests a jury trial of all issues in this action so triable.

## X.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Blu Track and Belding, jointly and severally, and award the following relief:

A.    A declaration that Plaintiff's FlexTrack 5000 products do not infringe any trademark, trade dress or copyright owned by Defendants and that Defendants' Counterfeit Complaint to Amazon was false, misleading and unlawful.

B.    A further declaration that Defendants' submission, certification under penalty of perjury, maintenance and refusal to withdraw the false Counterfeit Complaint constitute false and misleading representations, unfair competition, tortious interference, defamation and business disparagement under federal law and Texas law.

C.    A temporary restraining order, and thereafter preliminary and permanent injunction relief, enjoining and restraining Defendants, their officers, agents, servants, employees, successors, assigns, representatives and all persons in active concert or participation with them, from directly or indirectly:

        i.    Submitting, maintaining, assisting, inducing or re-submitting any false, misleading, defamatory or disparaging complaint or communication

concerning Plaintiff or its products to Amazon, any other marketplace or third-party;

    ii.  Publishing or disseminating any statement that Plaintiff's products are counterfeit, unsafe, deceptively labeled, infringing or otherwise unlawful;

    iii.  Engaging in any unfair competition, deceptive conduct or acts causing injury to Plaintiff's business reputation; and

    iv.  Engaging in any conduct intended or reasonably likely to interfere with Plaintiff's business relationships, account health, manufacturing operations, distribution channels or online marketplace presence.

D.  An order directing Defendants to:

    i.  Retract and withdraw the false Counterfeit Complaint that it submitted to Amazon, namely, Complaint ID 18780905851;

    ii.  Issue a written retraction acknowledging the falsity of the Counterfeit Complaint;

    iii.  Provide corrective notice to Amazon and any other marketplace or platform in which the false statements were communicated, confirming that Plaintiff's products are authentic, lawful and non-infringing.

E.  Compensatory damages in an amount to be proven at trial, including but not limited to, loss revenue, diverted sales, lost business operations, damage to goodwill, harm to business relationships and loss of marketplace ranking and visibility.

F.  Exemplary damages.

Valchemist LLC

G.  Treble damages and enhanced damages.

H.  Plaintiff's reasonable attorneys' fees and costs

I.  Pre-judgment and post judgment interest as allowed by law.

J.  Costs of court and all taxable costs.

K.  Such other and further relief as the Court deems proper and just in law or in equity.

Respectfully submitted,

/s/   *Aaron P. Peacock*
Aaron P. Peacock
State Bar No. 24060399
**PEACOCK LAW FIRM PLLC**
4131 N. Central Expressway, Suite 961
Dallas, Texas 75204
Telephone:  (214) 617-1000
Facsimile:  (214) 617-1010
Email:  apeacock@peacockfirm.com

**ATTORNEY FOR PLAINTIFF**